**In re: Danny PADILLA, Debtor.**

**William T. Neary, United States Trustee for Region 16, Appellant.**

v.

**Danny Padilla, Appellee.**

**No. 98–55099.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1999.

Filed Aug. 14, 2000.

---

1186

Deborah Ruth Kant (signed the briefs) and E. Roy Hawkens (argued), Civil Division, Department of Justice, Washington, D.C., for the appellant.

J. Elliott McIntosh, Pacific Law Group, Santa Ana, California, for the appellee.

Before: RYMER and McKEOWN, Circuit Judges, and SHEA,[1] District Judge.

Opinion by Judge SHEA; Dissent by Judge RYMER.

SHEA, District Court Judge:

## OVERVIEW

William T. Neary, the United States Trustee for Region 16 ("Trustee"), appeals the Ninth Circuit Bankruptcy Appellate Panel's ("BAP's") order reversing the bankruptcy court's dismissal of Danny Padilla's ("Padilla's") Chapter 7 bankruptcy petition. In the bankruptcy court, the Trustee had filed a motion to dismiss Padilla's petition for bad faith pursuant to 11 U.S.C. § 707(a). The court found Padilla had filed his petition in bad faith and granted the Trustee's § 707(a) motion. On appeal, the BAP reversed and remanded the case for reinstatement of the petition. The Trustee timely filed the instant appeal. During the pendency of this appeal, the bankruptcy court discharged Padilla's debts and closed the case.

At issue are 1) whether this court has jurisdiction over the appeal of the BAP's order to reverse and remand, 2) whether this appeal is moot because Padilla's debts have already been discharged in bankruptcy, and 3) whether the bankruptcy court erred in its decision to dismiss the petition. Holding 1) that we have jurisdiction because the bankruptcy court's and the BAP's decisions are final orders, 2) that the appeal is not moot because the bankruptcy court lacked jurisdiction to discharge the bankruptcy and because no events have occurred that prevent this court from granting any effective relief, and 3) that the bankruptcy court erred in dismissing Padilla's petition pursuant to § 707(a), we affirm the BAP's decision and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 19, 1996, Danny Padilla filed a voluntary petition for Chapter 7 liquidation in the United States Bankruptcy Court for the Central District of California. At the time, Padilla had a monthly take-home income of $1,950 and monthly expenses of $1,830. He had accrued almost $100,000 in credit card debt—a debt apparently related to gambling losses of $50,000 to $80,000 that Padilla had incurred during most of 1995. Padilla's assets consisted of his house and personal property. His house, though mortgaged for $145,000, was valued at $115,000. His personal property, valued at $11,745, included cash, furnishings, a

---

1. Honorable Edward F. Shea, United States District Judge for the Eastern District of Washington, sitting by designation.

car, and other personal effects. Padilla claimed an exemption for all but $1,000 of his personal property.

██ On June 27, 1996, the Trustee moved to dismiss Padilla's petition for bad faith under 11 U.S.C. § 707(a) alleging that Padilla had engaged in credit card "bust-out." Credit card "bust-out" is a term used to describe a person's accumulation of a consumer debt in anticipation of filing for bankruptcy. The bankruptcy court granted the motion and dismissed Padilla's petition on September 10, 1996. On September 23, 1996, Padilla appealed to the BAP. The BAP held that, given the facts presented in the case, the bankruptcy court erred in concluding Padilla's filing constituted bad faith requiring dismissal under § 707(a). The BAP then reversed the bankruptcy court's order dismissing the petition and remanded the case for reinstatement. The BAP entered the judgment on October 24, 1997, and issued its mandate to the bankruptcy court on November 21, 1997. On December 22, 1997, the Trustee filed a notice of appeal to this court. The Trustee did not move to stay the BAP's judgment. In February 1998, the bankruptcy court, having reinstated Padilla's petition and proceeded with the bankruptcy, discharged Padilla's debts and closed the case. The Trustee did not object to the discharge.

## II. JURISDICTION OVER THE APPEAL OF THE BAP'S ORDER

██ This Court has jurisdiction over this appeal only if both the bankruptcy court's order dismissing Padilla's bankruptcy petition and the BAP's order to reverse and remand are final orders. *See* 28 U.S.C. § 158(d); *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 911 (9th Cir.1988).

██ The bankruptcy court's order dismissing Padilla's bankruptcy petition is a final order. *See id.* (stating that "a dismissal of a debtor's bankruptcy petition is final, terminating, as it does, all litigation in the case"). A bankruptcy appellate panel's order is final if it affirms or re-

verses a final bankruptcy court order. *See id.* However, where the panel's order reverses and remands the matter, this Circuit has applied a four-factor test to determine whether the order is final. *See Stanley v. Crossland, Crossland, Chambers, MacArthur & Lastreto (In re Lakeshore Village Resort, Ltd.)*, 81 F.3d 103 (9th Cir.1996). The factors considered are "(1) the need to avoid piecemeal litigation; (2) judicial efficiency; (3) the systemic interest in preserving the bankruptcy court's role as the finder of fact; and (4) whether delaying review would cause either party irreparable harm." *Id.* at 106 (citing *Vylene Enterprises, Inc. v. Naugles, Inc. (In re Vylene Enterprises, Inc.)*, 968 F.2d 887, 895–96 (9th Cir.1992), *vacated on other grounds*, 90 F.3d 1472 (9th Cir.1996)).

While the court has not always explicitly considered these factors, determination of a remanding decision's finality must be based on analysis of these factors. *See Lakeshore Village*, 81 F.3d at 107; *Walthall v. United States*, 131 F.3d 1289, 1293 (9th Cir.1997) (holding district court's decision not final because two factors in the threshold *Lakeshore Village* bankruptcy finality test weighed against finality).

██ Here, the four-factor test establishes the BAP's order as a final order: three of the four *Lakeshore Village* factors favor finality and the fourth is neutral. First, regardless of the court's decision on this appeal, piecemeal litigation is not a concern because no further appeal to this court on the Padilla bankruptcy is foreseeable. In the event the court reverses the BAP, the discharge will be reversed and Padilla's bankruptcy petition will be dismissed. Nothing in that series of events will give rise to an appeal: the creditors stand to benefit by the dismissal and are therefore unlikely to appeal and Padilla has no foreseeable ground on which to appeal. Should the court affirm the BAP's holding that Padilla's petition should not have been dismissed by the bankruptcy court, there appears to be nothing that

could be appealed; the bankruptcy court has already entered an Order of Discharge and closed the file without a subsequent appeal. *Cf. Walthall,* 131 F.3d at 1293–94 (finding a potential for piecemeal litigation because there would undoubtedly be an appeal of an additional issue if the court found for the debtors); *Lakeshore Village,* 81 F.3d at 107 (finding potential for piecemeal litigation because another appeal would be likely if the court found for the trustee).

The second factor, judicial efficiency, is neutral.

Third, the bankruptcy court's role as the finder of fact would not be undermined by a finding that the BAP's order is final. The substantive issue before this court, whether the bankruptcy court erred in dismissing Padilla's petition pursuant to § 707(a) on the ground that Padilla filed his petition in bad faith, is predominately "legal" because it involves interpreting § 707(a) and applying that interpretive law to the facts of this case, not pure fact finding.

Finally, delaying review would make little sense. The bankruptcy court entered an Order of Discharge, albeit without jurisdiction, and closed the file. There is nothing pending in that court. Accordingly, delaying review would have no benefit and would irreparably harm the Trustee by preventing review of the BAP decision.

That the BAP's order is final comports with our decision in *Kelly.* In *Kelly,* the court held the bankruptcy appellate panel's decision reversing and remanding the bankruptcy court's order was a final order.

841 F.2d at 911. The court reasoned that the remand concerned questions in which legal issues predominated because the underlying facts were not disputed; hence the questions were subject to de novo review. *See id.* Further, the court found the policies of judicial efficiency were best served by directly resolving the question before it. See *id.*

We hold that both the bankruptcy court's order of dismissal and the BAP's decision to reverse and remand are final orders; this court has jurisdiction over the instant appeal.

## III. MOOTNESS OF THE APPEAL

■ Padilla maintains that this appeal is moot because the bankruptcy court has discharged his debts already. Federal courts lack jurisdiction to decide moot claims. *See Village of Gambell v. Babbitt,* 999 F.2d 403, 406 (9th Cir.1993). This appeal is not moot if the bankruptcy court lacked jurisdiction to proceed with Padilla's bankruptcy during the pendency of this appeal. As is discussed below, with the timely filing of this appeal by the Trustee, the bankruptcy court was divested of jurisdiction to proceed with Padilla's bankruptcy. This court therefore has jurisdiction.

■ The BAP's mandate, issued November 21, 1997, vested jurisdiction in the bankruptcy court to resume proceedings on Padilla's petition.[2] *See Marino v. Classic Auto Refinishing, Inc. (In re Marino),* 234 B.R. 767, 770 (9th Cir. BAP 1999) (stating that once an appellate court ren-

---

2. Where the Bankruptcy Rules concerning appeals to the Bankruptcy Appellate Panel and the Ninth Circuit Bankruptcy Appellate Panel Rules are silent as to a particular matter of practice before the BAP, the BAP may apply the Rules of the United States Court of Appeals for the Ninth Circuit, the Federal Rules of Appellate Procedure, or any relevant rule of the Supreme Court. *See* 9th Cir. Bankr. App. Panel R. 13. (note: this rule, though in effect when the BAP mandate issued, has been superseded by 9th Cir. Bankr. App. Panel R. 8018(b)-1 which incorporates changes that are not pertinent here).

Both the Bankruptcy Rules and the Ninth Circuit Bankruptcy Appellate Panel Rules are silent regarding the timing for issuance of mandates. The BAP therefore applies Federal Rule of Appellate Procedure 41 which requires issuance of a mandate seven days after the time to file a petition for rehearing expires. *See* Fed. R.App. P. 41(b). Since a motion for rehearing must be filed within ten days after entry of the BAP's judgment, *see* Bankr.R. 8015, the BAP's mandate, issued on the 28th day after entry of judgment, was appropriately and not prematurely issued.

**1190**

ders its decision on a matter, jurisdiction remains with the appellate court until it issues its mandate). However, the Trustee's timely filing of its notice of appeal of the BAP's decision to this court conferred jurisdiction on this court and divested both the BAP and the bankruptcy court of control over those aspects of the case involved in the appeal. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) ("The filing of a notice of appeal ... confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); *Hill & Sandford, LLP v. Mirzai (In re Mirzai)*, 236 B.R. 8, 10 (9th Cir. BAP 1999) ("[I]f a district court would be forbidden to act because of an appeal pending before the court of appeals, then both the bankruptcy appellate panel and the bankruptcy court would be similarly constrained."); *Marino*, 234 B.R. at 770 (noting that the jurisdiction the bankruptcy court regained upon the issuance of the BAP's mandate was divested upon the creditor's filing of its notice of appeal to the court of appeals from the BAP's decision).

The rule divesting lower courts of jurisdiction of aspects of a case involved in an appeal " 'is judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time.' " *United States v. Thorp (In re Thorp)*, 655 F.2d 997, 998 (9th Cir.1981) (quoting 9 Moore, Federal Practice P 203.11 n. 1); *accord Marino*, 234 B.R. at 769. This rule is not absolute. For example, a district court has jurisdiction to take actions that preserve the status quo during the pendency of an appeal, *see Securities and Exch. Comm'n v. American Capital Invs., Inc.*, 98 F.3d 1133, 1146 (9th Cir. 1996); *see also Mirzai*, 236 B.R. at 10, but " 'may not finally adjudicate substantial rights directly involved in the appeal.' " *McClatchy Newspapers v. Central Valley Typographical Union No. 46, Int'l Typographical Union*, 686 F.2d 731, 734–35 (9th Cir.1982) (quoting *Newton v. Consolidated Gas Co.*, 258 U.S. 165, 177, 42 S.Ct.

264, 66 L.Ed. 538 (1922)); *see also Pyrodyne Corp. v. Pyrotronics Corp.*, 847 F.2d 1398, 1403 (9th Cir.1988). Absent a stay or supersedeas, the trial court also retains jurisdiction to implement or enforce the judgment or order but may not alter or expand upon the judgment. *See Bennett v. Gemmill (In re Combined Metals Reduction Co.)*, 557 F.2d 179, 190 (9th Cir. 1977); *Hagel v. Drummond (In re Hagel)*, 184 B.R. 793, 798 (1995); *Marino*, 234 B.R. at 770.

Here, the bankruptcy court's discharge of Padilla's debts and closure of the case drastically changed the status quo and amounted to a final adjudication of the substantial rights directly involved in the appeal. It also did not constitute implementation or enforcement of the BAP's judgment reversing and remanding for reinstatement of Padilla's petition. Additionally, it is immaterial that the Trustee failed to obtain a stay pending review since a stay is necessary only to halt actions that a court is empowered to take. Therefore, we hold that the bankruptcy court lacked jurisdiction to proceed with Padilla's bankruptcy during the pendency of this appeal. The bankruptcy court's discharge order is therefore null and void, *see, e.g., Combined Metals*, 557 F.2d at 201 (holding that, because the district court was divested of jurisdiction by the filing of an appeal, the district court's subsequent order vacating the order under appeal was "a nullity"), and does not render this appeal moot.

## IV. THE BANKRUPTCY COURT'S DECISION TO DISMISS

The BAP held that the bankruptcy court erred in concluding Padilla's filing constituted bad faith requiring dismissal under § 707(a). This court reviews the BAP's decision de novo. *See Preblich v. Battley*, 181 F.3d 1048, 1051 (9th Cir. 1999) (stating that review of a district court's decision on appeal from a bankruptcy court is de novo); *Arden v. Motel Partners (In re Arden)*, 176 F.3d 1226, 1227 (9th Cir.1999) (reviewing the BAP's decision de novo). In essence, we review

de novo whether the bankruptcy court erred in concluding that bad faith is a ground for dismissal under § 707(a). We affirm the BAP's conclusion that § 707(a) does not apply here.

 Under § 707(a), a court may dismiss a bankruptcy liquidation petition filed under Chapter 7 of the Bankruptcy Code only after notice and a hearing and only *for cause,* including —

> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
>
> (3) failure of the debtor in a voluntary case to file, within fifteen days . . ., the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

11 U.S.C.A. § 707(a) (West 1993) (italics added). The grounds that § 707(a) lists as providing "cause" for dismissal are illustrative and not exhaustive. *See* 11 U.S.C. § 102(3) (defining "including," for purposes of Title 11, to be "not limiting"); *Huckfeldt v. Huckfeldt (In re Huckfeldt),* 39 F.3d 829, 831 (8th Cir.1994) (holding that the enumerated grounds for a "for cause" dismissal are nonexclusive); *Industrial Ins. Servs., Inc. v. Zick (In re Zick),* 931 F.2d 1124, 1126 (6th Cir.1991) (finding that the word "including" "is not meant to be a limiting word").

Whether bad faith can provide "cause" for dismissing a Chapter 7 bankruptcy petition pursuant to § 707(a) is a matter of first impression for this court. The Sixth Circuit and a host of bankruptcy courts that have considered the issue have found bad faith to be a ground for dismissal under § 707(a). *See, e.g., Zick,* 931 F.2d at 1127 (bad faith can provide cause for a § 707(a) dismissal); *In re Lacrosse,* 244 B.R. 583, 587 (Bankr.M.D.Pa.1999) (a Chapter 7 petition may be dismissed under § 707(a) for lack of good faith in filing the petition); *In re Smith,* 229 B.R. 895, 897 (Bankr.S.D.Ga.1997) (debtor's lack of good faith in filing bankruptcy petition will constitute "cause" for dismissal of Chapter 7

case); *In re Griffieth,* 209 B.R. 823, 831 (Bankr.N.D.N.Y.1996) (holding dismissal was justified under § 707(a) because the debtors' case was not filed in good faith); *In re Sky Group Int'l, Inc.,* 108 B.R. 86, 90 (Bankr.W.D.Pa.1989) (a showing of bad faith can result in dismissal under § 707(a)). Taking a different view, the Eighth Circuit and several bankruptcy courts have found bad faith as such to be an improper basis for a § 707(a) dismissal. *See, e.g., Huckfeldt,* 39 F.3d at 832 (stating that while some conduct giving rise to dismissal under § 707(a) can be characterized as bad faith, the issue is properly whether the petition should be dismissed "for cause"); *In re Etcheverry,* 242 B.R. 503, 506 (D.Colo.1999) (holding that because there is no explicit "good faith" requirement in Chapter 7, bad faith cannot constitute "cause" for dismissal under § 707(a)); *In re Landes,* 195 B.R. 855, 855 (Bankr.E.D.Pa.1996) (holding that a good faith filing requirement cannot be read into § 707(a), embracing *In re Latimer,* 82 B.R. 354 (Bankr.E.D.Pa.1988), and tacitly overruling *In re Marks,* 174 B.R. 37 (1994)). As is discussed below, we agree with the Eighth Circuit that bad faith as a general proposition does not provide "cause" to dismiss a Chapter 7 petition under § 707(a).

Balanced against the relief that the Bankruptcy Code makes available to debtors are the protections the Code affords creditors and, through the United States trustee or the court itself, the public. In the Chapter 7 context, four provisions allow creditors and trustees to object to the discharge of debt: (1) under 11 U.S.C. § 523(a)(2)(A) and (c)(1), a creditor may request that a debtor be prevented from discharging a particular debt for money, property, services, or credit obtained by fraud, false pretenses or misrepresentation; (2) under 11 U.S.C. § 727(a)(2), (c)(1), a creditor, the bankruptcy trustee, or the United States trustee may object to a Chapter 7 discharge generally, on the grounds that the debtor, with the intent to defraud a creditor, intentionally transferred or concealed property; (3) the court

on its own or on a motion by the United States trustee may dismiss a Chapter 7 petition if the debts are primarily consumer debts and if granting relief would be a substantial abuse of the provisions of Chapter 7, *see* 11 U.S.C. § 707(b); and (4) 11 U.S.C. § 707(a) allows a court to dismiss a Chapter 7 petition "for cause" and sets forth three particular grounds that, including unspecified others, provide "cause" for dismissal. *see* 11 U.S.C. § 707(a)(1)-(3). Section 707(a) is the only ground raised by the Trustee. The three explicit grounds contained in § 707(a) have been described as being "technical and procedural" violations of the Bankruptcy Code. Katie Thein Kimlinger & William P. Wassweiler, *The Good Faith Fable of 11 U.S.C. S 707(a): How Bankruptcy Courts Have Invented a Good Faith Filing Requirement for Chapter 7 Debtors,* 13 Bankr.Dev. J. 61, 97 (1996). *See also In re Motaharnia,* 215 B.R. 63, 67 (Bankr. C.D.Cal.1997) (noting that § 707(a) is geared toward maintaining the integrity of the bankruptcy process).

 Statutory construction canons require that "[w]here both a specific and a general statute address the same subject matter, the specific one takes precedence regardless of the sequence of the enactment, and must be applied first." *In re Khan,* 172 B.R. 613, 624 (Bankr.D.Minn. 1994) (citing *Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980) and *Preiser v. Rodriguez,* 411 U.S. 475, 489–90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)). Therefore, a debtor's misconduct should be analyzed under the most specific Code provision that addresses that type of misconduct. *See* Kimlinger & Wassweiler, *supra,* at 72.

Of the four Code provisions that protect the public and creditors from Chapter 7 debtors, three are specific in nature in that they can be used only in particular circumstances. *See* 11 U.S.C. § 523(a)(2)(A), (c)(1) (indebtedness obtained by fraud); 11 U.S.C. § 727(a)(2), (c)(1) (transfer of assets

with intent to defraud a creditor); 11 U.S.C. § 707(b) (discharge of consumer debts would be substantial abuse of Chapter 7). Therefore, debtor misconduct falling within the particular circumstances addressed by one of the three provisions must be analyzed under that provision.

The fourth provision, 11 U.S.C. § 707(a), in reciting three technical and procedural grounds that provide "cause" for dismissal, functions as a "specific" Code provision. Yet, some courts have focused on the word "including," in § 707(a) and used it as a "general" Code provision that allows dismissal for bad faith. *See* discussion *supra* pp. 13–14. No provision that protects Chapter 7 creditors and the public explicitly uses the words "good faith" or "bad faith." Therefore, the question of whether a Chapter 7 debtor's bad faith can provide "cause" for dismissal or grounds for preventing discharge under §§ 523(a)(2)(A), 727(a)(2), 707(b) or 707(a) necessarily depends on the nature of the debtor's actions or inactions that have given rise to the "bad faith" label and whether they are within the contemplation of specific Code provisions. We agree with the Eighth Circuit which stated that

> some conduct constituting cause to dismiss a Chapter 7 petition may readily be characterized as bad faith. But framing the issue in terms of bad faith may tend to misdirect the inquiry away from the fundamental principles and purposes of Chapter 7. Thus, we think the § 707(a) analysis is better conducted under the statutory standard, "for cause."

*Huckfeldt,* 39 F.3d at 832.

 We note that Chapters 11 and 13 of the Bankruptcy Code each contain a "dismissal for cause" provision that is structured like § 707(a) and includes the same or similar examples of "cause" as § 707(a).[3] However, under the Chapter 11 and Chapter 13 provisions we have held that bad faith does provide "cause" to dismiss Chapter 11 and Chapter 13 bankruptcy petitions.[4] What distinguishes

---

3. *See* 11 U.S.C. § 1112(b); 11 U.S.C. § 1307(c).

4. *See Leavitt,* 171 F.3d at 1224 (stating that bad faith, though not specifically listed, is a

Chapters 11 and 13 from Chapter 7 is the language of the Bankruptcy Code itself and the post-filing relationship between the debtor and his creditors. The Bankruptcy Code specifically mentions good faith in Chapters 11 and 13 when it permits a court to confirm a payment plan only if it is proposed in good faith.[5] No mention of good faith or bad faith is made in Chapter 7. Also, the post-filing debtor-creditor relationship is markedly different in liquidation and reorganization bankruptcies. Chapters 11 and 13, both reorganization chapters, permit the debtor to "retain its assets and reorder its contractual obligations to its creditors. In return for these benefits, ... the debtor [must] approach its new relationship with the creditors in good faith ..." Kimlinger & Wassweiler, *supra*, at 65. Chapter 7, a liquidation chapter, "requires no ongoing relationship between the debtor and its creditors" and should be available to any debtor willing to surrender all of its non-exempt assets, "regardless of whether the debtor's motive in seeking such a remedy was grounded in good faith." *Id.* at 65. In *Eisen*, we linked the good faith requirement implicit in a Chapter 13 bankruptcy with the good faith requirement for proposing a payment plan when we stated that "[t]o determine if a petition has been filed in bad faith courts are guided by the standards used to evaluate whether a plan has been proposed in bad faith." 14 F.3d at 470. The Bankruptcy Code's language and the protracted relationship between reorganization debtors and their creditors lead us to conclude that bad faith per se can properly constitute "cause" for dismissal of a Chapter 11 or Chapter 13 petition but not of a Chapter 7 petition under § 707(a).[6]

■ Having discarded the "bad faith" label in favor of simply examining the actions of the debtor that are complained of, and assuming *arguendo* that Padilla's pre-filing activities constitute credit card bust-out, the remaining issue is whether Padilla's credit card bust-out provides "cause" for dismissal under § 707(a). We begin by observing that there is no evidence that Padilla violated any technical or procedural requirements of Chapter 7. The record reveals no failure to pay filing fees or to file necessary information. Padilla did not falsify bankruptcy forms or cause delays during the administration of bankruptcy proceeding. Thus, Padilla's bankruptcy petition can only be dismissed under § 707(a) if credit card bust-out is not a type of misconduct or cause contemplated by any specific Code provision applicable to Chapter 7 petitions.

■ Padilla's debts—consisting of credit card debt and a mortgage—are solely consumer debts. *See Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 913 (9th Cir.1988) (holding that a mortgage used to purchase a home and a home equity line of credit incurred for home improvements and repayment of credit card debts were consumer debt). Section 707(b) concerns consumer debt and provides in relevant part that

> [a]fter notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the

---

"cause" for dismissal under 11 U.S.C. § 1307(c)); *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir.1994) (stating that a Chapter 13 petition filed in bad faith may be dismissed "for cause" pursuant to 11 U.S.C. § 1307(c)); *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828, 829 (9th Cir.1994) (affirming the bankruptcy court's dismissal of a Chapter 11 debtor's petition pursuant to 11 U.S.C. § 1112(b) for "cause" based on bad faith after noting that "[a]lthough section 1112(b) does not explicitly require that cases be filed in 'good faith,' courts have overwhelmingly held that a lack of good faith in

filing a Chapter 11 petition establishes cause for dismissal").

5. *See* 11 U.S.C. § 1129(a)(3); 11 U.S.C. § 1325(a)(3).

6. Some courts have noted that a court has inherent authority to dismiss a bankruptcy petition for "bad faith." *See, e.g., Huckfeldt*, 39 F.3d at 832 ("If the bankruptcy court elects instead to act under the inherent judicial power to punish a bad faith litigant, that action should not be taken under § 707(a)."). We do not reach that issue here.

request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C.A. § 707(b) (West Supp.1999). The history of § 707(b) demonstrates that this subsection, rather than § 707(a), was intended as the mechanism by which the court or the United States trustee could address general concerns regarding discharge of consumer debt.[7] In 1978, when Congress enacted the Bankruptcy Code, § 707 comprised only part of what is now § 707(a). There was no § 707(b).

Within several years the consumer credit industry mobilized

> in an attempt to curtail the access of debtors to Chapter 7 relief. . . . This move was brought about by the increasingly popular perception that people were using the bankruptcy system, not to extricate themselves from an unfortunate situation, but rather as a method of avoiding debts even though they were not suffering economic hardship and possessed future income sufficient to meet their obligations. . . . According to the consumer credit industry, this "needless discharge" of debt led to the shifting of the repayment burden for literally billions of dollars of debt to the public at large, and principally to those who utilized consumer credit at increasingly higher interest rates.

Robert M. Thompson, Comment, *Consumer Bankruptcy: Substantial Abuse and Section 707 of the Bankruptcy Code*, 55 Mo. L.Rev. 247, 249 (1990). Finally, "[i]n response to persistent pressure from creditors, who felt that debtors were avoiding bothersome unsecured debts which they could easily repay, Congress enacted section 707(b) in the Bankruptcy Amendments and Federal Judgeship Act of 1984, . . . to address some of the perceived abuses of chapter 7." Kimlinger & Wassweiler, *supra*, at 75. Had "cause" in § 707(a) been broadly construed, § 707(b) would have been unnecessary. *See, e.g., Motaharnia*, 215 B.R. at 67 (stating that 707(b) "was created to provide the court with a tool to prevent the discharge of debt owed by non-needy consumer debtors and to deal equitably when an unscrupulous consumer attempts to use the bankruptcy court as part of a scheme to take unfair advantage of his creditors."). Therefore, Padilla's credit card bust-out, a consumer debt, is a type of misconduct contemplated by § 707(b).

We hold that Padilla's alleged credit card "bust out" did not constitute cause under § 707(a) and thus the bankruptcy court's dismissal of Padilla's petition pursuant to § 707(a) was improper.

The Bankruptcy Court's discharge of Padilla's debts in bankruptcy is void, the BAP's decision is affirmed, and the case is remanded for further proceedings consistent with this opinion.

AFFIRMED.

RYMER, Circuit Judge, dissenting:

Whether or not it would have been more felicitous for the U.S. Trustee to move under 11 U.S.C. § 707(b), I am persuaded by *In re Zick*, 931 F.2d 1124 (6th Cir. 1991), that "good faith" has long been understood as an implicit requirement in Chapter 7 bankruptcy proceedings, and that "lack of good faith is a valid basis of decision in a 'for cause' dismissal by a bankruptcy court." *Id.* at 1127. Lack of

---

7. We note that other Bankruptcy Code provisions would be appropriate in a different consumer debt situation. For example, 11 U.S.C. § 523, rather than § 707(b), is the provision under which a creditor may contest the discharge of a specific consumer debt. *See, e.g., In re Motaharnia*, 215 B.R. 63, 69 (Bankr. C.D.Cal.1997) (holding that it is not appropriate to consider, under § 707(a) bad faith, the debtor's intent at the time of incurring a particular credit card charge not to repay creditors; such consideration is made under 11 U.S.C. § 523(a)(2)).

good faith is manifest when a debtor such as Padilla deliberately racks up debts he has no ability to repay and then seeks to shield himself from creditors through bankruptcy. I would, therefore, affirm the bankruptcy court's dismissal of the petition.